IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UMEKA LEWIS-PICCOLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-2897 |
| | § | |
| CITY OF HOUSTON, ELIZABETH E. | § | |
| GONZALEZ, MAGED MOHAMMED | § | |
| ABUZAID, AND DAVID REYES, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[1] are Defendants City of Houston
("City") and Elizabeth E. Gonzalez's ("Gonzalez") Motion to Dismiss
(Doc. 42) and Defendant Maged Mohammed Abuzaid, also known as David
Reyes's ("Abuzaid") Motion to Dismiss (Doc. 43) (collectively,
"Defendants"). Defendants' earlier motions to dismiss Plaintiff's
Second Amended Complaint (Docs. 20, 22) are **DENIED AS MOOT**. The
court has considered the motions, Plaintiff's responses (Docs. 44,
45), all other relevant filings, and the applicable law. For the
reasons set forth below, the court **RECOMMENDS** that the City and
Gonzalez's motion be **GRANTED IN PART AND DENIED IN PART** and that
Abuzaid's motion be **DENIED**.

## I.  Case Background

Plaintiff filed this action in state court, and it was removed

---

[1]   This case was referred to the undersigned magistrate judge pursuant
to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the
Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  <u>See</u> Doc. 6,
Ord. Dated Oct. 6, 2016.

to federal court on September 28, 2016. In the live pleading, Plaintiff alleges violations of 42 U.S.C. § ("Section") 1983 and state law claims of malicious prosecution, false imprisonment, assault, and intentional infliction of emotional distress, arising from her arrest on June 5, 2015.[2]

## A. <u>Factual Background</u>

The following factual account is derived from Plaintiff's third amended complaint.

On June 5, 2015, in connection with a civil lawsuit, Plaintiff, an attorney, and co-counsel, Amir Tavakkoli ("Tavakkoli"), went to A Auto Inc. ("A Auto") for an inspection related to a discovery request.[3] Abuzaid, owner of A Auto, protested their entry onto his property for the inspection.[4] Abuzaid recognized Plaintiff because she had sued him before, and he became confrontational.[5] As Tavakkoli started to record the interaction with his cell phone, Abuzaid aggressively took the cell phone from Tavakkoli, resulting in an injury to Tavakkoli's hand.[6] Tavakkoli called 911.[7] Plaintiff and Tavakkoli left the A Auto

---

[2] <u>See</u> Doc. 41, Pl.'s 3d Am. Compl.

[3] <u>See</u> <u>id.</u> pp. 4-5.

[4] <u>See</u> <u>id.</u> p. 5.

[5] <u>See</u> <u>id.</u> pp. 5-6

[6] <u>See</u> <u>id.</u> p. 6.

[7] <u>See</u> <u>id.</u>

business premises and waited on the sidewalk for the police to arrive.[8] Gonzalez, a City of Houston police officer, arrived two hours after Tavakkoli first made the phone call to 911.[9]

Gonzalez interviewed Plaintiff and Tavakkoli and then entered A Auto to talk to Abuzaid.[10] After Gonzalez came back outside, she chastised Plaintiff and Tavakkoli, stating, "You told me you had history, but not like that. I should arrest you two for trespassing, but [it] has been more than a year [] since your last warning."[11] Plaintiff denied that she had been to A Auto before.[12] Gonzalez stated that she was shown a surveillance video of the events that transpired between Abuzaid, Plaintiff, and Tavakkoli and, based on the video, Gonzalez concluded that no assault had occurred.[13] Gonzalez then threatened to arrest Plaintiff and Tavakkoli.[14] Plaintiff questioned the basis on which Gonzalez could arrest them.[15]

Gonzalez asked Plaintiff and Tavakkoli to leave the A Auto

---

[8] See id.

[9] See id.

[10] See id.

[11] Id. p. 7.

[12] See id.

[13] See id.

[14] See id.

[15] See id.

3

premises.[16]   Plaintiff instead demanded the contact information for
Gonzalez's sergeant.[17]   This angered Gonzalez, and she ordered
Plaintiff to go to her car.[18]   Plaintiff refused to comply and
insisted that she wanted to report Gonzalez, to which Gonzalez
retorted that it did not matter to her if Plaintiff reported her to
the chief of police.[19]

Plaintiff began walking towards her car, intending to report
Gonzalez's conduct, when Gonzalez approached Plaintiff and arrested
her on a charge of interfering with a peace officer's duties.[20]
Plaintiff was told to stop resisting arrest as Gonzalez handcuffed
her.[21]

Gonzalez placed Plaintiff in the back of the police car and
closed the door.[22]   Gonzalez brought Abuzaid outside in order that
he hear her give Plaintiff a verbal warning not to trespass on his
property in the future.[23]   Gonzalez also called Abuzaid's attorney,
William Cappasso, who allegedly told Gonzalez that Plaintiff and
Tavakkoli needed an order from the court before they could conduct

---

[16]    See id.

[17]    See id.

[18]    See id.

[19]    See id.

[20]    See id. pp. 7-8.

[21]    See id. p. 8.

[22]    See id.

[23]    See id.

a property inspection.[24]

On the way to jail, Gonzalez stopped and completed the paperwork related to Plaintiff's arrest, with Plaintiff in the car and the windows closed.[25] Plaintiff was processed at approximately four p.m., and Gonzalez placed a homicide hold on Plaintiff.[26] Bail in the amount of $2,500 was set at six a.m. the following day, and Plaintiff was released at nine a.m.[27] After several court proceedings, the charges against Plaintiff were dropped.[28] Plaintiff attributes the dismissal of the charges to the surveillance video and the phone video of the incident which undermined the accuracy of Gonzalez's offense report.[29]

**B.    Procedural Background**

On June 6, 2016, Plaintiff filed her original petition in the 215th Judicial District Court of Harris County, Texas, bringing claims against all defendants for false imprisonment, wrongful prosecution, violations of Section 1983, and exemplary damages.[30] Plaintiff filed a first amended petition in state court on

---

[24]    See id. p. 9.

[25]    See id.

[26]    See id.

[27]    See id.

[28]    See id. pp. 9, 11.

[29]    See id. p. 11.

[30]    See Doc. 1-4, Ex. D to Defs. City and Gonzalez's Not. of Removal, Pl.'s Orig. Pet.

September 6, 2016, again alleging claims against all defendants for wrongful prosecution, false imprisonment, violations of Section 1983, and seeking exemplary damages.[31]

On September 28, 2016, the City and Gonzalez removed this action to this court.[32] All defendants filed motions to dismiss Plaintiff's first amended complaint.[33]

In response, Plaintiff filed a second amended complaint on October 26, 2016.[34] In this complaint, Plaintiff alleged claims against all defendants for wrongful prosecution, false imprisonment, and violations of Section 1983. Plaintiff added an assault claim against Abuzaid.[35] The court mooted Defendants' motions to dismiss based on this amended complaint.[36]

The City and Gonzalez moved to dismiss the second amended complaint on November 16, 2016.[37] Abuzaid filed a motion to dismiss on January 3, 2017.[38]

---

[31]    See Doc. 1-4, Ex. D to Defs. City & Gonzalez's Not. of Removal, Pl.'s 1st Am. Pet.

[32]    See Doc. 1, Defs. City & Gonzalez's Not. of Removal.

[33]    See Doc. 3, Defs. City & Gonzalez's Mot. to Dismiss Pl.'s 1st Am. Compl.; Doc. 5, Def. Abuzaid's Mot. to Dismiss Pl.'s 1st Am. Compl.

[34]    See Doc. 18, Pl.'s 2d Am. Compl.

[35]    See id.

[36]    See Doc. 40, Minute Entry Ord. Dated Mar. 15, 2017.

[37]    See Doc. 20, Defs. City and Gonzalez's Mot. to Dismiss Pl.'s 2d Am. Compl.

[38]    See Doc. 22, Def. Abuzaid's Mot. to Dismiss Pl.'s 2d Am. Compl.

On April 5, 2017, with the court's permission, Plaintiff filed a third amended complaint, thereby superseding her second amended complaint and rendering Defendants' second round of motions to dismiss moot.[39] Defendants filed the pending motions to dismiss on April 19, 2017, and Plaintiff responded to both motions on May 10, 2017.[40]

## II. Legal Standards

Pursuant to the federal rules, dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); 12(h)(3). Federal courts may exercise jurisdiction over cases only as authorized by the United States Constitution and the jurisdictional statutes. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001). The party asserting jurisdiction bears the burden of overcoming the presumption that the cause falls outside the court's limited jurisdiction. Kokkonen, 511 U.S. at 377; Howery, 243 F.3d at 916, 919. In considering such a motion, the court must take as true all uncontroverted factual allegations in the complaint. John Corp. v. City of Houston, 214 F.3d 573, 576 (5th Cir. 2000).

---

[39]    See Doc. 40, Minute Entry Ord. Dated Mar. 15, 2017; Doc. 41, Pl.'s 3d Am. Compl.

[40]    See Doc. 42, Defs. City & Gonzalez's Mot. to Dismiss Pl.'s 3d Am. Compl.; Doc. 43, Def. Abuzaid's Mot. to Dismiss Pl.'s 3d Am. Compl.; Doc. 44, Pl.'s Resp. in Opp'n to Defs. City & Gonzalez's Mot. to Dismiss Pl.'s 3d Am. Compl.; Doc. 45, Pl.'s Resp. in Opp'n to Def. Abuzaid's Mot. to Dismiss Pl.'s 3d Am. Compl.

The court may decide a motion to dismiss for lack of jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming, 281 F.3d at 161. The court, in determining whether it is properly vested with subject matter jurisdiction, is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)(quoting Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004)).

The court should decide the Federal Rule of Civil Procedure ("Rule") 12(b)(1) motion before addressing any attack on the merits. Ramming, 281 F.3d at 161. A district court has original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. However, its jurisdiction over such actions is limited to actual cases or controversies. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement . . . ." Id. at 560.

Pursuant to Rule 12(b)(6), dismissal of an action is appropriate whenever the complaint, on its face, fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should construe the allegations in the

complaint favorably to the pleader and accept as true all well-pleaded facts. <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 546 (5th Cir. 2010).

When reviewing a Rule 12(b)(6) motion, the court must be mindful that a complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Twombly</u>, 550 U.S. at 555.

### III. Analysis

In Plaintiff's third amended complaint, she brings claims for violations of Section 1983, malicious prosecution, and false

imprisonment against the City and Gonzalez. Plaintiff alleges claims for assault and intentional infliction of emotional distress against Abuzaid. Although Plaintiff alludes to "John Does 1-20" at the beginning of her complaint, she has offered no factual allegations in support of a claim against these potential defendants. The City and Gonzalez move to dismiss Plaintiff's Section 1983, false imprisonment, and malicious prosecution claims against them, and the City also argues that it is immune from exemplary damages.

Abuzaid moves to dismiss Plaintiff's Section 1983, malicious prosecution, and assault claims.

## A.    The City and Gonzalez: Rule 12(b)(1) Motion

In their Rule 12(b)(1) motion, the City and Gonzalez argue that: (1) Gonzalez should be dismissed from the state law claims based on Texas Civil Practice and Remedies Code § 101.106(e); (2) the City is immune under the TTCA as Plaintiff only alleges intentional torts; and (3) the City is immune from exemplary damages.

### 1.    Texas Tort Claims Act

As a municipality, the City is entitled to the protection of governmental immunity. Mission Consol. Indep. Sch. Dist. v. Garcia, 253 S.W.3d 653, 655 n.2 (Tex. 2008)(stating that municipalities are protected by governmental immunity); see also Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). Texas governmental

10

units enjoy immunity from claims unless Texas has consented to allowing suit.  <u>Tex. Dep't of Parks & Wildlife v. Miranda</u>, 133 S.W.3d 217, 224 (Tex. 2004).

Texas waives immunity for a limited number of situations as described in the TTCA.  <u>Garcia</u>, 253 S.W.3d at 659; <u>see also</u> Tex. Civ. Prac. & Rem. Code §§ 101.021-101.025.  Generally, the TTCA waives immunity for property damage, personal injury, and death caused by wrongful acts of employees if arising from the use of a motor-driven vehicle or from a condition or use of tangible personal or real property.  <u>See</u> Tex. Civ. Prac. & Rem. Code § 101.021.  Claims "arising out of assault, battery, false imprisonment, or any other intentional tort" are excepted from the general waiver.  Tex. Civ. Prac. & Rem. Code § 101.057.

Under the election of remedies provision of the TTCA, "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(e).  This election of remedies provision applies in the context of intentional tort claims, which are covered by the TTCA.  <u>Bustos v. Martini Club</u>, 599 F.3d 458, 463 (5th Cir. 2010).

"Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued

alone or together with its employees, are assumed to be 'under [the Tort Claims Act].'" <u>Garcia</u>, 253 S.W.3d at 659 (Tex. 2008); <u>see also</u> <u>Bustos</u>, 599 F.3d at 463. This includes intentional tort claims. <u>Garcia</u>, 253 S.W.3d at 658-59.

Therefore, the court must consider Plaintiff's intentional tort claims for false imprisonment and malicious prosecution against the City and Gonzalez to be brought under the TTCA. <u>See</u> <u>Donohue v. Dominguez</u>, 486 S.W.3d 50, 54 (Tex. App.–San Antonio 2016, pet. denied)(holding "any civil claims brought for false imprisonment . . . are claims subject to the Texas Tort Claims Act"); <u>McFadden v. Olesky</u>, No. 03-16-00067-CV, 2017 WL 1130381, __ S.W.3d __, at *7 (Tex. App.–Austin Mar. 23, 2017, pet. filed)(holding that claims for malicious prosecution fell under the purview of the TTCA); <u>Fink v. Anderson</u>, 477 S.W.3d 460, 468 (Tex. App.–Houston [1st Dist.] 2015, no pet.)(stating that malicious prosecution is an intentional tort).

Malicious prosecution and false imprisonment are intentional torts, and therefore, immunity is not waived for these claims against the City under the TTCA. <u>See</u> Tex. Civ. Prac. & Rem. Code § 101.057. Gonzalez has derivative immunity pursuant to Tex. Civ. Prac. & Rem. Code § 101.06(e). Plaintiff's claims for false imprisonment and malicious prosecution against the City and Gonzalez must be dismissed.

**2. Exemplary Damages - State Claims**

Plaintiff seeks exemplary damages for Defendants' allegedly malicious conduct under Texas Civil Practice Code § 41.003(a). The court has recommended that Plaintiff's state law claims be dismissed, which would moot her claim for exemplary damages if the recommendation is adopted. Additionally, even if the TTLA would allow a suit, the Texas Civil Practice and Remedies Code § 101.024 explicitly states that governmental immunity is not waived for exemplary damages. See Tex. Civ. Prac. & Rem. Code § 101.024; City of Houston v. Johnson, 353 S.W.3d 499, 503 (Tex. App.–Houston [14th Dist.] 2011, pet. denied). Plaintiff's claim for exemplary damages on the state law causes of action should be dismissed.

**B.  The City and Gonzalez: Rule 12(b)(6) Motion**

In their Rule 12(b)(6) motion, the City and Gonzalez argue that: (1) Gonzalez had probable cause to arrest Plaintiff and is entitled to qualified immunity; (2) Plaintiff has not adequately alleged a Section 1983 claim against the City; and (3) the City is exempt from punitive damages under Section 1983.

**1.  Gonzalez**

A plaintiff can establish a prima facie case under Section 1983[41] for the deprivation of civil rights by establishing: (1) a

---

[41]    The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

violation of a federal constitutional or statutory right; and (2) that the violation was committed by an individual acting under the color of state law. <u>Doe v. Rains Cty. Indep. Sch. Dist.</u>, 66 F.3d 1402, 1406 (5th Cir. 1995). The statute creates no substantive rights but only provides remedies for deprivations of rights created under federal law. <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989).

Gonzalez asserts the defense of qualified immunity. Government officials are entitled to qualified immunity from liability for civil damages "unless [(1)] the official violated a statutory or constitutional right [(2)] that was clearly established at the time of the challenged conduct." <u>Reichle v. Howards</u>, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012)(citing <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011)). Courts have discretion to determine in which order the two prongs are considered. <u>al-Kidd</u>, 563 U.S. at 735. Qualified immunity protects an officer regardless of whether the error was "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)(quoting <u>Groh v. Ramirez</u>, 540 U.S. 551, 567 (2004)).

In order to overcome an assertion of qualified immunity, a plaintiff bears the initial burden of showing that the officer's

equity, or other proper proceeding for redress . . . .
42 U.S.C. § 1983.

14

conduct violated a constitutional right. <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002); <u>Williams v. Kaufman Cnty.</u>, 352 F.3d 994, 1002 (5th Cir. 2003). The inquiry ends if the allegations do not support a finding of constitutionally impermissible conduct. <u>Mace v. City of Palestine</u>, 333 F.3d 621, 623 (5th Cir. 2003).

If, however, the plaintiff satisfies this initial burden, the court determines whether the right was clearly established at the time of the violation. <u>Hope</u>, 536 U.S. at 739; <u>Williams</u>, 352 F.3d at 1002. A legal right is "clearly established" if pre-existing law sufficiently defines the right so that a reasonable public official would understand whether his actions were constitutional in the situation confronting him. <u>Hope</u>, 536 U.S. at 739; <u>Williams</u>, 352 F.3d at 1002-03 (quoting <u>Hope</u>, 536 U.S. at 539). Ultimately, if the legal rules are sufficiently clear, then a plaintiff must prove that the officer's actions were objectively unreasonable within that legal context. <u>See</u> <u>Hare v. City of Corinth, Miss.</u>, 135 F.3d 320, 326 (5th Cir. 1998).

Here, Plaintiff alleges that her rights under the Fourth and Fourteenth Amendment were violated by Gonzalez "after wrongfully being incarcerated [] for one day without an arrest warrant or probable cause."[42] The court construes this as a claim for false arrest.

---

[42] Doc. 41, Pl.'s 3d Am. Compl. p. 11.

The Fourth Amendment,[43] applied to state actors through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment encompasses both constitutional protections that Plaintiff alleged to have been violated.

When bringing a claim for false arrest in violation of the Fourth Amendment, a plaintiff must show that the defendant did not have probable cause for the arrest. See Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001) (stating that the constitutional tort of false arrest requires "a showing of no probable cause"). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." United States v. Levine, 80 F.3d 129, 132 (5th Cir. 1996).

Plaintiff was arrested under Texas Penal Code § 38.15(a)(1), which states that "[a] person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with: (1) a peace officer while the peace officer is

[43]    The full text of the Fourth Amendment is:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

performing a duty or exercising authority imposed or granted by law." Tex. Penal Code § 38.15(a)(1).

In her third amended complaint, Plaintiff alleges that, after Tavakkoli was assaulted by Abuzaid, Tavakkoli called the police, and they waited two hours for Gonzalez to arrive. After Gonzalez took their statements, she went inside A Auto to talk to Abuzaid. Once emerging, Gonzalez was visibly angry with Plaintiff and Tavakkoli, threatening to arrest them for trespass and complaining that they mischaracterized the history between themselves and Abuzaid. Plaintiff questioned the basis for the threat of imminent arrest. Gonzalez repeatedly told Plaintiff to go to her car, but Plaintiff remained and asked Gonzalez for her sergeant's information so she could report Gonzalez. After being asked repeatedly to go to her car, Plaintiff turned and started walking to her car, declaring that she was going to report Gonzalez. Gonzalez then arrested Plaintiff.

Texas Penal Code § 38.15(d) creates a defense to the crime of interference with public duties if the person's actions "consisted of speech only." Tex. Penal Code § 38.15(d). In defense of her claim, Plaintiff cites <u>Freeman v. Gore</u>, 483 F.3d 404 (5th Cir. 2007), which explores this defense in the context of a Section 1983 claim. In <u>Freeman</u>, the plaintiff was arrested for interfering with public duties and hindering apprehension after yelling at officers that she did not want her home searched without a warrant.

17

Freeman, 483 F.3d at 408-09. The Fifth Circuit concluded that the officers did not have probable cause for two reasons: (1) the plaintiff refused to consent to the search, the officers did not have a warrant, and the suspect for whom they had the arrest warrant did not reside in the plaintiff's house; and (2) the officers did not have probable cause because the plaintiff's actions consisted solely of speech. Id. at 414.

Gonzalez argues that she had probable cause to arrest Plaintiff based on Plaintiff's admission in her complaint that she did not immediately walk to her car as ordered. However, the court finds that, based solely on the facts as alleged, Gonzalez did not have probable cause to arrest Plaintiff. Freeman counseled that "Texas courts have recognized that merely arguing with police officers about the propriety of their conduct . . . falls within the speech exception to [Texas Penal Code §] 38.15." Id. The court cited Payne v. Pauley, 337 F.3d 767, 776 (7th Cir. 2003), for the proposition that "the First Amendment protects even profanity-laden speech directed as police officers" because "[p]olice officers reasonably may be expected to exercise a higher degree of restraint than the average citizen." Id. at 414 n. 7. Here, Plaintiff's description of her conduct did not show any sort of physical obstruction by Plaintiff; instead, Plaintiff alleged only that an argument took place between herself and Gonzalez. Therefore, if Plaintiff's version of the encounter is believed,

Gonzalez did not have probable cause for the charge of interference with a peace officer's duties.

At the time of Plaintiff's arrest, there was a clearly established right under the Fourth Amendment to be free from false arrest and case law, as well as statutory support, that mere speech is not a basis for an arrest for interference with a peace officer's duties. See Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 206 (5th Cir. 2009); Freeman, 483 F.3d at 414; Tex. Penal Code § 38.15(d).

The second prong of a Section 1983 claim that Plaintiff must prove is that the officer's actions were objectively unreasonable within that legal context. See Hare, 135 F.3d at 326. Because speech-only is a defense to interfering with public duties, it is possible for a trier of fact to find that no reasonable officer under the circumstances of this case would have thought that probable cause existed for an arrest. See Freeman, 483 F.3d at 416. Therefore, based on the facts alleged in the live pleading, the court finds that Gonzalez's motion to dismiss based on qualified immunity must be denied at this time.

## 2. The City

The City specifically argues that: (1) Plaintiff's allegations about the City's allegedly unconstitutional policy were conclusory and failed to state a claim upon which relief could be granted; (2) the City may not be held liable under a theory of respondeat

superior; and (3) Plaintiff has not adequately pled a failure to train or supervise claim, and has not adequately alleged a pattern of violations by the City.

###    a.  Section 1983

A city may be held liable under Section 1983 only for its own illegal acts, not pursuant to a theory of vicarious liability. Connick v. Thompson, 563 U.S. 51, 60 (2011). To succeed on a claim under Section 1983, the plaintiff must demonstrate that the city "had some inadequate custom or policy that acted as the moving force behind a constitutional violation." Forgan v. Howard Cty., Tex., 494 F.3d 518, 522 (5th Cir. 2007)(citing Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690-91 (1978)); see also Connick, 131 S. Ct. at 1359. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61.

Courts have recognized that, under limited circumstances, the failure to train or to supervise its employees may give rise to local-government liability under Section 1983. See id.; Zarnow v. City of Wichita Falls, Texas, 614 F.3d 161, 169, 170 (5th Cir. 2010). In failure-to-train cases, a plaintiff must prove the inadequacy of the procedures, the policymaker's deliberate indifference, and causation. Zarnow, 614 F.3d at 170.

A local government can be held liable only when its failure to

train or to supervise amounted to deliberate indifference to the constitutional rights of its citizens. Connick, 563 U.S. at 61 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). In order to show deliberate indifference by the municipality, a plaintiff must generally show a pattern of similar constitutional violations by untrained employees.[44] Connick, 563 U.S. at 62. Where the question is not whether the officers received any training in the constitutional requirements, but whether the officers received adequate training, the plaintiff cannot rely on proof that additional training would have created a better officer or would have reduced the likelihood of a constitutional violation but must prove that the "officers were so untrained as to be unaware" of constitutional limitations. Pineda v. City of Houston, 291 F.3d 325, 333 (5th Cir. 2002); see also City of Canton, Ohio, 489 U.S. at 391. The Supreme Court has cautioned, "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 563 U.S. at 61.

However, this court has found that at the motion to dismiss stage, a plaintiff "need not specifically state what the policy is

---

[44]     In extreme circumstances, a single act by an officer may form the basis for liability if "the 'highly predictable' consequence of a failure to train would result in the specific injury suffered[] and . . . the failure to train represented the 'moving force' behind the constitutional violation." Roberts v. City of Shreveport, 397 F.3d 287, 295-96 (quoting Brown v. Bryan Cnty., Okla., 219 F.3d 450, 461 (5th Cir. 2000), but distinguishing Brown as a case in which the deputy received no training at all).

. . . but may be more general." <u>Thomas v. City of Galveston</u>, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011).  A plaintiff must still "provide fair notice to the defendant, and this requires more than generically restating the elements of municipal liability." <u>Id.</u> Such allegations could include "past incidents of misconduct to others, multiple harms that occurred to the plaintiff, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." <u>Id.</u>

Here, Plaintiff alleges that the City is liable under Section 1983 because "[t]he policy, practice, and custom was to evaluate, but not train or re-train officers that have exhibited disturbing behavior, including insubordination, and history of write-ups for such behavior.  The City of Houston failed to train [Defendant] Gonzalez."[45]

The court agrees with the City that this is insufficient to meet the pleading standard necessary to allege a deprivation of rights based on the lack of training.  There is no connection between "disturbing behavior," "insubordination," or a "history of write-ups" to the facts in this case or a failure to train. However, if discovery uncovers facts showing that Gonzalez was not trained on the legal elements of an interference with a peace officer charge or was disciplined for an earlier wrongful arrest

---

[45]     <u>See</u> Doc. 41, Pl.'s 3$^{d}$ Am. Compl. p. 12.

for interference with a peace officer, or was disciplined for earlier conduct similar to the conduct alleged in the complaint, the court may allow discovery into other similar instances of misconduct that might support a claim against the City for a failure to train.

Accordingly, Plaintiff's failure to train claim should be dismissed. Although the court does not read Plaintiff's third amended complaint to seek respondeat superior liability against the City, to the extent that it did, such claim should be dismissed.

### b. Exemplary Damages

The City argues it is immune from punitive damages under Section 1983. The court agrees. In <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981), the Supreme Court held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." Therefore, Plaintiff may not seek punitive damages against the City for its Section 1983 claim.

## C. <u>Abuzaid</u>

In Plaintiff's third amended complaint, she alleges claims for assault and intentional infliction of emotional distress against Abuzaid. Abuzaid reiterates his arguments from his second motion to dismiss, moving to dismiss Plaintiff's assault claim and any claims under Section 1983 against him.

### 1. Section 1983

Plaintiff's third amended complaint no longer alleges a

Section 1983 claim or malicious prosecution claim against Abuzaid. Plaintiff's response confirms this fact, when Plaintiff states that "[i]n the Third Amended Complaint, Plaintiff has pled plausible facts to state a claim against Abuzaid for assault, and the alternative claim of intentional infliction of emotional distress."[46] Therefore, Abuzaid's motion to dismiss these claims must be denied as moot.

## 2. Assault

"In Texas the intentional tort of assault is identical to criminal assault." <u>McLaurin v. Waffle House, inc.</u>, 178 F. Supp.3d 536, 556 (S.D. Tex. 2016)((citing <u>Villafranca v. United States</u>, 587 F.3d 257, 260-61 (5th Cir. 2009)(citing <u>Hall v. Sonic Drive-In of Angleton, Inc.</u>, 177 S.W.3d 636, 649 (Tex. App.–Houston [1st Dist.] 2005, pet. denied))). In this case, Plaintiff has not alleged that Abuzaid made any sort of physical contact with her, but she claims that she was threatened by his actions, which courts applying Texas law have called an "assault-by-threat." <u>Hernandez v. United States</u>, 802 F. Supp.2d 834, 843 (W.D. Tex. 2011)(citing <u>Olivas v. Texas</u>, 203 S.W.3d 341, 345 (Tex. Crim. App. 2006)). Therefore, the relevant portion under Texas Penal Code § 22.01(a)(2) reads that a person commits an assault-by-threat if he "intentionally or knowingly threatens another with imminent body injury." Tex. Penal

---

[46]    <u>See</u> Doc. 45, Pl.'s Resp. in Opp'n to Def. Abuzaid's Mot. to Dismiss Pl.'s 3d Am. Compl. p. 2.

Code § 22.01(a)(2); <u>Hernandez</u>, 802 F. Supp.2d at 843. To establish a civil assault, the plaintiff must show that she "experienced apprehension or fear." <u>Olivas</u>, 203 S.W.3d at 346-47.

Abuzaid challenges Plaintiff's assault claim, contending that "Plaintiff admits that his actions were not directed against her."[47] However, in her third amended complaint, Plaintiff alleges that "[o]nce [Abuzaid] identified [Plaintiff] he became very irate and began to exhibit aggression towards [Plaintiff]."[48] After Tavakkoli began to record Abuzaid, Plaintiff alleges Abuzaid snatched Tavakkoli's phone out of his hands, which Plaintiff asserts placed her in fear of imminent bodily harm.[49] While the court agrees with Abuzaid that Plaintiff must ultimately prove that she was in fear of imminent bodily harm, the court finds that Plaintiff's allegations are sufficient. Therefore, Abuzaid's motion to dismiss the assault claim should be denied.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that the City and Gonzalez's motion to dismiss be **GRANTED IN PART AND DENIED IN PART**. The court recommends that Abuzaid's motion to dismiss be **DENIED**. The following claims remain: Plaintiff's Section 1983 claim against

---

[47]     <u>See</u> Doc. 43, Def. Abuzaid's Mot. to Dismiss Pl.'s 3<sup>d</sup> Am. Compl. p. 5.

[48]     <u>See</u> Doc. 41, Pl.'s 3<sup>d</sup> Am. Compl. p. 6.

[49]     <u>See</u> <u>id.</u>

Gonzalez and Plaintiff's claims for assault and IIED against Abuzaid.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 1st day of June, 2017.

U.S. MAGISTRATE JUDGE